IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ERNESTINE ELLIOTT,
individually and as the personal
representative of the estate of
Katrina M. Cook,

    Plaintiff,

v.

GARY, WILLIAMS, PARENTI,
WATSON AND GARY, P.L.L.C.;
WILLIE E. GARY; CHANTHINA
B. ABNEY; and LERONNIE
MASON,

    Defendants.

CIVIL ACTION FILE

NO. 1:20-cv-5283-TCB

# **O R D E R**

This case comes before the Court on Defendants' motion [9] to

dismiss for failure to state a claim and motion [10] to strike. This case is

also before the Court on Plaintiff Ernestine Elliott's motion [28] for

leave to file a surreply in further opposition to the motion to dismiss.

## I.   Background[1]

### A.   Elliott's Retention of Willie Gary

On March 10, 2014, Katrina Cook was driving a Nissan Infiniti northbound on the C.H. James Parkway in Cobb County when a southbound Mazda collided with a southbound Toyota and the Toyota crossed the center lane and collided with Cook. A tractor-trailer directly behind Cook was unable to stop and rear-ended Cook. Upon impact, Cook's Nissan burst into flames. Cook died in the fire.

The next day, Defendant Willie Gary, a lawyer based in Stuart, Florida, contacted Plaintiff Ernestine Elliott, Cook's mother, about retaining his firm to bring wrongful death claims on behalf of Cook's estate. Gary then met with Elliott in Georgia and suggested that he bring a products liability claim against Nissan and a negligence claim against the owner/operator of the tractor-trailer, Schneider National Carrier, Inc., and its employee/driver. He insisted that Elliott retain him immediately so as to preserve critical evidence, and he represented

---

[1] The following factual averments derived from the complaint are presumed true at the motion to dismiss stage.

2

that he could obtain a billion-dollar verdict for Cook's estate. That day, Elliott executed a contingency fee agreement with Gary.

## B.   Cook's Death Benefit

At the time of her accident, Cook had a GEICO automobile insurance policy that included a $100,000 death benefit under the policy's uninsured motorist coverage. Shortly after the accident, GEICO informed Elliott that she was entitled to the death benefit as Cook's beneficiary because the driver of the Mazda (the Mazda owner's daughter) was uninsured.

Elliott mentioned the death benefit to Gary, who informed her that as her lawyer, he would review all payments and issues relating to the accident including the death benefit. Accordingly, Elliott authorized GEIGO to send the check to Gary and to communicate with him regarding Cook's policy.

Thereafter, Gary generally became unavailable to Elliott. On a few occasions when Elliott managed to speak with him, he continued to promise a billion-dollar recovery and stated that he would arrange for her to receive the death benefit soon.

During this time, Gary asserted a claim for $25,000 under the Mazda owner's liability insurance coverage, also issued by GEICO. GEICO agreed to tender the $25,000.

In October 2014, Gary sent Elliott a closing statement showing the total settlement amount from GEICO to be $125,000. The statement indicated that after deducting Gary's forty-percent contingent fee, advanced and unpaid costs, and funds to be held in trust for future expenses, Elliott would receive $62,642.79.

Gary confirmed these figures in a phone conversation with Elliott on or about October 15, 2014. According to Elliott, Gary represented that he had negotiated the $125,000 settlement under the Mazda *owner*'s GEICO policy, leading her to believe that her $62,642.79 settlement share would be in addition to the $100,000 death benefit from the uninsured motorist coverage. He again assured Elliott that he expected to receive a billion-dollar recovery from Nissan and Schneider. When Elliott asked about the status of those claims, Gary falsely reported that lawsuits had been commenced and were being aggressively pursued.

Based on Gary's misrepresentations, Elliott signed the closing statement and expected to receive $62,642.79. However, months went by without Elliott receiving either the funds or any communication from Gary or anyone else at his firm. On May 26, 2015, Elliott sent Gary a termination letter and requested the return of her complete file. Gary did not respond to the letter.

In December 2015, Gary's assistant sent Elliott a GEICO release form for the $100,000 death benefit. Shortly before Christmas, Gary called Elliott, claimed not to have received her termination letter, and lied to her by indicating that everything was on track for her billion-dollar recovery. He asked her to sign the GEICO release, but Elliott did not do so immediately.

In April 2016, Gary again called asking for the release and promised to pay Elliott the entire $100,000 death benefit as soon as GEICO sent it to him. The complaint avers that "Elliott may have signed and returned the GEICO release, but she believes Gary may have forged her signature." *Id.* ¶ 35. Elliott received the $62,642.79

payment in June 2016. She continued to ask about the status of the
death benefit but received no response from Gary or his firm.

### C.  Gary's Action Against Nissan

On May 24, 2016, over two years after the fatal accident,
Defendant Gary, Williams, Parenti, Watson and Gary, P.L.L.C. (the
"Gary Firm") brought a wrongful death action in the Superior Court of
Cobb County, Georgia, against Nissan North America, Inc., asserting
claims for strict liability, negligence, and breach of implied warranties.

After Nissan timely removed the action to this Court, it moved for
summary judgment on the grounds that (1) the claims seeking wrongful
death damages were time barred by O.C.G.A. § 9-3-33's two-year
limitations period; and (2) the product liability claims were barred
under O.C.G.A. § 51-1-11(c)'s ten-year statute of repose, which requires
that such claims be brought no later than ten years after the first sale
of the product alleged to have caused the plaintiff's injuries. The first
sale of Cook's Nissan model was on September 3, 2005, requiring any
product liability claim to be brought on or before September 3, 2015.

The Gary Firm filed no response in opposition to the motion for summary judgment, and the Court entered judgment in favor of Nissan.

The firm did not update Elliott on the status of the Nissan case until January 17, 2019, when Defendant LeRonnie Mason called Elliott to tell her that the action had been dismissed due to the expiration of the statute of repose. Mason followed up his call with a letter stating that the firm was in the process of retrieving Elliott's case file from storage but that he would forward her a complete copy of her file on a computer disc in the next few days. Though Mason asserted that he had sent Elliott a prior letter on November 17, 2017, Elliott avers that she never received the first letter, nor has she received her case files.

At no point did Gary or his firm commence any action against Schneider or its employee/driver of the tractor-trailer. The statute of limitations for any wrongful death claims expired on March 10, 2016 (two years from the date of Cook's death), and the statute of limitations for any personal injury claims belonging to Cook's estate expired on September 26, 2016 (two years from the date of Elliott's appointment as Cook's personal representative: *see* O.C.G.A.§ 9-3-92).

### D. Procedural Background

Elliott first brought these claims against Defendants on October 31, 2019, in the Superior Court of Fulton County. Defendants moved to dismiss, in part due to Elliott's failure to attach the expert affidavit required by O.C.G.A. § 9-11-9.1(a) for professional malpractice claims. On August 3, 2020, Elliott voluntarily dismissed the case.

On December 30, 2020, Elliott filed this action alleging claims initially asserted in the state court action: (1) legal malpractice claims against Defendants for their failure to timely bring lawsuits against Nissan and Schneider, for their deduction of fees and expenses from the $100,000 death benefit, and for other false representations; and (2) fraud, conversion, bad faith attorney's fees, and punitive damages claims against the Gary Firm and Willie Gary for Gary's retention and conversion of the death benefit proceeds.

Defendants move to dismiss the complaint for failure to state a claim, arguing that the substantive claims are time barred. Defendants also move to strike eleven paragraphs of the complaint containing

allegations of Defendants' malpractice in a series of unrelated cases. The motions are ripe for the Court's review.

## II.    Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" This pleading standard does not require "detailed factual allegations," but it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012) (quoting *id.*). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a

sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678 (citation omitted) (quoting *Twombly*, 550 U.S. at 556); *see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324–25 (11th Cir. 2012).

Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555–56 (citations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011), the Court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations, *Iqbal*, 556 U.S. at 678.

Accordingly, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

## III. Discussion

### A. Motion to Dismiss

Defendants move to dismiss Elliott's complaint as time barred.

#### 1. Legal Malpractice Claims

Generally, the statute of limitations for a legal malpractice claim sounding in contract is four years from the breach of the duty. *See Douglas Kohoutek, Ltd. v. Harley, Rowe & Fowler, PC*, 543 S.E.2d 406, 407 (Ga. Ct. App. 2000) (citations omitted); *Plumlee v. Davis*, 473 S.E.2d 510, 513 (Ga. Ct. App. 1996). The period of limitations begins to run "from the date of the attorney's breach of duty, that is, from the date of the alleged negligent or unskillful act." *Riddle v. Driebe*, 265 S.E.2d 92, 94 (Ga. Ct. App. 1980) (citations omitted).

Defendants contend that Elliott's legal malpractice claims accrued and the statute of limitations began to run on the respective dates by which Defendants should have filed Elliott's product liability, wrongful death, and personal injury lawsuits: September 3, 2015; March 10, 2016; and September 26, 2016. Thus, the limitations period expired four years after those dates—before Elliott filed this action in December

2020. They make the same argument for any legal malpractice claim based on expenses or fees that should not have been removed from the GEICO proceeds: the statute of limitations began to run when Elliott received the funds in June 2016 and expired four years later in June 2020.

However, the Supreme Court of Georgia has held that professional malpractice claims premised upon a complete written agreement are subject to a six-year rather than four-year statute of limitations. *See Newell Recycling of Atlanta, Inc. v. Jordan Jones & Goulding, Inc.*, 703 S.E.2d 323, 326 (Ga. 2010); O.C.G.A. § 9-3 24.

Elliott has attached as an exhibit to her complaint the contingent fee arrangement that she entered into with the Gary Firm. The agreement is signed by the law firm, the party to be charged. It discusses both the contingent fee arrangement and the scope of the firm's representation of Elliott. Accordingly, the Court finds that under Georgia law, the applicable limitations period for Elliott's legal malpractice claims could be six years.

"[D]ismissal for failure to state a claim on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time barred." *Luczak v. Farnham*, 842 F. App'x 374, 377 (11th Cir. 2021) (per curiam) (citing *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)). At this stage, it is not apparent that Elliott's legal malpractice claims are time barred. Thus, the Court will deny Defendants' motion to dismiss these claims.[2]

### 2. Fraud and Conversion Claims

Next, Defendants argue that Elliott's fraud and conversion claims are also barred by the applicable four-year statutes of limitations.

In Georgia, the statute of limitations for fraud claims is four years. O.C.G.A. § 9-3-31; *Hamburger v. PFM Cap. Mgmt., Inc.*, 649 S.E.2d 779, 784 (Ga. Ct. App. 2007) (citations omitted). The same is true for claims for conversion. *See Rollins v. LOR, Inc.*, 815 S.E.2d 169, 177 (Ga. Ct. App. 2018) (citing O.C.G.A. § 9-3-32).

---

[2] Accordingly, the Court need not consider Elliott's arguments as to why the statute of limitations for her legal malpractice claims is entitled to the benefit of tolling under both O.C.G.A. § 9-3-96 (fraud as a basis for tolling) and § 9-2-61 (Georgia's renewal statute).

Defendants assert that the latest conduct listed in the complaint as the factual basis for the fraud and conversion claims occurred in June 2016, when they sent Elliott a sum of funds that was allegedly less than that to which she was entitled. *See, e.g.*, *Denson v. Maloy*, 521 S.E.2d 666, 667 (Ga. Ct. App. 1999) ("The four-year statute of limitation applicable to fraud claims runs from the date actual injury occurs." (citations omitted)); *Stewart v. Warner*, 571 S.E.2d 189, 190 (Ga. Ct. App. 2002) (explaining that the statute of limitations for conversion "begins to run when the damage from the tortious act is actually sustained by plaintiffs," i.e., "on the date of the conversion or theft." (citations omitted)). Thus, Defendants argue, the statutes of limitations for Elliott's fraud and conversion claims expired in June 2020, prior to the filing of this action.

Elliott responds that Georgia's renewal statute applies to her fraud and conversion claims. Under O.C.G.A. § 9-2-61(a), when a case has been commenced in state or federal court within the applicable limitations period and the plaintiff dismisses it, the plaintiff may refile it as a renewal action in state or federal court "either within the

applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later." This action was commenced within six months of Elliott's dismissal of her state court action. Thus, Elliott contends that the renewal statute applies to these claims, giving them the benefit of the October 31, 2019 filing date of the state court action.

In reply, Defendants assert that Elliott cannot take advantage of the renewal provision because the complaint does not plead the necessary prerequisites for tolling under the renewal statute.[3]

For a plaintiff to show that she is entitled to file a renewal suit, the renewal complaint must affirmatively show that (1) the former action was not void; (2) the present action is a valid suit that may be renewed under O.C.G.A. § 9-2-61; (3) the present action is "based upon substantially the same cause of action"; and (4) the present action is "not a renewal of a previous action which was dismissed on its merits."

---

[3] Elliott moves for leave to file a surreply so that she may respond to Defendants' argument that this complaint cannot serve as a basis for renewal because it fails to please the necessary prerequisites for the renewal statute to apply. For good cause, the Court will exercise its discretion to grant Elliott's motion and will consider her arguments raised in her proposed surreply brief.

*Whitesell v. Ga. Power Co.*, 800 S.E.2d 370, 371 (Ga. Ct. App. 2017) (citations omitted); s*ee also Jester v. Emerson Climate Techs., Inc.*, 849 F. App'x 849, 853–54 (11th Cir. 2021) (per curiam) (applying these requirements to a renewal action filed in federal court).

Elliott's complaint does not affirmatively plead these requisite facts. However, Defendants have attached the relevant state court filings to their motion to dismiss. Accordingly, the Court will grant Elliott's request to take judicial notice of them, and it finds that the requirements for the renewal statute to apply are satisfied. *See, e.g.*, *Universal Express, Inc. v. U.S. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006) (per curiam) (stating that a district court may take judicial notice of certain facts, including public records such as a complaint, at the motion to dismiss stage (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999); *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003))); *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (per curiam) (finding that the district court properly took judicial notice of the pleadings and orders in the plaintiff's first lawsuit

attached as exhibits to the motion to dismiss (citing FED. R. EVID. 201(b)).

Thus, the Court declines to dismiss the fraud and conversion claims as untimely at this stage.

### 3. Bad Faith Liability and Punitive Damages Claims

Defendants move to dismiss Elliott's claims for bad faith liability and punitive damages because the claims are derivative of Elliott's substantive claims. Because the Court declines to dismiss Elliott's substantive claims, it will also deny Defendants' motion to dismiss these claims.

### B. Motion to Strike

Defendants move to strike paragraphs 41 through 51 of the complaint, which contain allegations of malpractice, fraud, and other misconduct by Defendants in unrelated cases.

Although Rule 12(f) of the Federal Rules of Civil Procedure permits a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter," motions to strike on these grounds "are not favored, often being considered time wasters, and will usually

be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Poston v. Am. President Lines, Ltd.*, 452 F. Supp. 568, 570 (S.D. Fla. 1978) (quotations omitted) (citing *Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862 (5th Cir. 1962)). "This conscious restraint by the court is well-founded in its recognition of the practical difficulty of deciding cases without a factual record." *Cherry v. Crow*, 845 F. Supp. 1520, 1524 (M.D. Fla. 1994) (citing *Augustus*, 306 F.2d at 868).

Defendants argue that the allegations contained in paragraphs 41 through 51 of the complaint are precisely those contemplated by Rule 12(f). They assert that the allegations have no bearing on the instant case and serve only to prejudice them.

Elliott responds that the allegations are primarily relevant to her claim for punitive damages because they are probative of Defendants' want of care and indifference to consequences.[4] She also argues that they are relevant to her allegations that Gary intentionally defrauded

---

[4] Paragraphs 41 and 51 state that the allegations are intended to support Elliott's claim for punitive damages.

her and that Defendants failed to take reasonable precautions to comply with the statutes of limitations when pursuing her claims.

The Court is loath to strike allegations from a pleading. However, it finds that these allegations are the kind contemplated by Rule 12(f). They are not probative of Elliott's claims of legal malpractice, fraud, and conversion in this case and may cause prejudice to Defendants. Accordingly, Defendants' motion to strike paragraphs 41 through 51 of the complaint will be granted. However, whether evidence of the alleged facts contained in the paragraphs will be admissible at trial to support Elliott's punitive damages claim is a question that remains for another day.

## IV. Conclusion

For the foregoing reasons, Defendants' motion [9] to dismiss is denied. Elliott's motion [28] for leave to file a surreply is granted. Defendants' motion [10] to strike is granted.

IT IS SO ORDERED this 29th day of September, 2021.

Timothy C. Batten, Sr.
Chief United States District Judge